UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

DARRICK DAVON OLIVER, TDCJ     ✶
No. 1921743,                     ✶
                            ✶
        **Petitioner,**       ✶
                            ✶     **CIVIL NO. SA-16-CA-00553-OLG**
**v.**                           ✶
                            ✶
**LORIE DAVIS, Director, Texas**   ✶
**Dep't Of Criminal Justice,**   ✶
**Correctional Institutions**   ✶
**Division,**                   ✶
                            ✶
        **Respondent.**       ✶

**AMENDED MEMORANDUM OPINION AND ORDER**

Darrick Davon Oliver, an inmate in the custody of the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ-CID"), has filed an application for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his convictions on two counts of retaliation as a habitual offender. (Docket Entry "DE" 1). Petitioner subsequently requested and was granted leave to file an amended petition. (DE 9 and 16). Petitioner has also requested a hearing (DE 32) and a "Motion for Time Limitation" (DE 34). As required by Rule 4 of the Rules Governing Section 2254 Cases, the Court conducted a preliminary review of the amended petition. Having considered the amended habeas application (DE 16), Respondent's Answer (DE 22), Movant's Responses (DE 33 and 35), Movant's Supplement (DE 36), the record (DE 23), and applicable law, the Court finds the petition should be **DENIED**. (DE 16). Petitioner's requests for

an evidentiary hearing and for "time limitations" are also **DENIED**. (DE 32 and 34).

## I. **Procedural Background**

Petitioner was charged with two counts of retaliation by threatening to harm two police officers, enhanced to habitual status by two prior convictions. (DE 23, pg. 411). On March 28, 2014, after petitioner pled not guilty to the offense and true to the two enhancements, a jury found him guilty of each count and further, found the enhancements to be true. (Id., pg. 570). Punishment was assessed at thirty years imprisonment in each case with the sentences to run concurrently. (Id., pg. 920). Petitioner timely filed a notice of appeal and, in an unpublished opinion issued on February 4, 2015, the Fourth Court of Appeals affirmed his conviction. *Oliver v. State*, No. 04-14-00261-CR, 2015 WL 505072 (Tex. App. 2015). On April 22, 2015, the Court of Criminal Appeals refused Oliver's petition for discretionary review. *Oliver v. State*, PDR No. 220-15.

Oliver then filed a state writ application on June 2, 2015, challenging his convictions. (DE 23, pgs. 868-84). The Court of Criminal Appeals denied his application without written order on January 20, 2016. (Id., pg. 845). Oliver filed his federal writ petition and amended federal writ petition on June 8, 2016 and January 1, 2017, respectively. (DE 1 and 16). In his amended petition, Oliver alleges the following:

1. He received ineffective assistance of trial and appellate counsel when—

   a. his motion for speedy trial was not ruled upon in spite of the delay between his arrest and trial;

   b. his attorney failed to subpoena witnesses;

   c. his right to confront witnesses was violated when the complainant's out-of-court statements were admitted at trial;

   d. his attorney failed to object to hearsay testimony;

   e. his attorney failed to file a motion to suppress the police officer's illegal search and seizure; and

   f. his attorney failed to provide a copy of trial transcripts.

2. He received ineffective assistance when his appellate counsel failed to raise grounds that the state habeas court found could have been raised on appeal.

3. African Americans were excluded from the jury.

(DE 16, pgs. 6-13).

## II.   **Factual Background**

The factual background was briefly summarized by the Fourth Court of Appeals in its Memorandum Opinion, dated February 4, 2015, as follows:

> According to one of the witnesses, who was Oliver's common law wife, Oliver assaulted her, her sister, and her friend after returning home late one evening. The argument started when Oliver removed his and his wife's baby from its crib against his wife's wishes. Oliver slammed his wife's hand in the bedroom doorway, punched his wife's sister in the jaw, and ultimately, threw all three women out of the house. The wife called police. By the time San Antonio police officers Matthew Martin and Vincent Giardino arrived, Oliver had locked all three women out of the house. Ultimately, the officers arrested Oliver based on

outstanding warrants. However, before the officers could remove him from the home, Oliver verbally threatened his wife, her sister, and her friend, reminding them of his gang affiliation. Oliver made similar threats against the officers, prompting the retaliation charges.[1]

*Oliver*, 2015 WL 505072, *1.[2]

### III. <u>Standards of Review</u>

### 1. **Review of State Court Adjudications**

Oliver's federal petition is governed by the heightened standard of review provided by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C.A. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States", or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v.*

---

[1]Section 36.06 makes it an offense to threaten to harm another by an unlawful act in retaliation for, or on account of, another's service or status as a public servant. TEX. PENAL CODE ANN. § 36.06(a)(1)(A) (West 2011).
[2]Petitioner disputes these facts in his response filed on September 18, 2017, arguing that no consent to enter was given and further, that the out of court statements violated petitioner's right to confront the witnesses. (DE 35).

4

*Richter*, 562 U.S. 86, 102 (2011) (*citing Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the state court's decision was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Oliver must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing

law beyond any possibility for fairminded disagreement." *Id.* at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

Furthermore, all of the grounds raised in a federal application for writ of habeas corpus must have been "fairly presented" to the state courts before being presented to the federal courts. *Picard v. Connor*, 404 U.S. 270, 275 (1971). Stated differently, the state court system must have been presented with the same facts and legal theory upon which the petitioner bases his assertions in order for a claim to be exhausted. *Id.* at 275-77. Thus "it is not enough . . . that a somewhat similar state-law claim was made." *Wilder v. Cockrell*, 274 F.3d 255, 260 (5th Cir. 2001) (*citing Anderson v. Harless*, 459 U.S. 4, 6 (1982)). A petitioner "advance[ing] in federal court an argument based on a legal theory distinct from that relied upon in the state court," "fails to satisfy the exhaustion requirement." *Id.* at 259 (*citing Vela v. Estelle*, 708 F.2d 954, 958 n.5 (5th Cir. 1983)).

Additionally, except for the narrow exceptions contained in § 2254(e)(2), a habeas petitioner is precluded from further factual development in federal court and must rely on the evidence presented to the state court when challenging a state court finding. *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). Reasoning that "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted

in a decision that unreasonably applied federal law to facts not before the state court," *Pinholster* explicitly held that "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.* at 182-85. Thus, "evidence introduced in federal court has no bearing on § 2254(d)(1) review" and this Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.*

## 2. Review of Sixth Amendment Claims

The Court reviews Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel ("IATC" claims) under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense. *Id.* at 687-88, 690. According to the Supreme Court, "[s]urmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

In determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards.

7

*Strickland,* 466 U.S. at 687-89. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (*quoting Strickland*, 466 U.S. at 690). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). As the Supreme Court explained, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. For this reason, every effort must be made to eliminate the "distorting effects of hindsight." *Strickland*, 466 U.S. at 689; *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.") (citations omitted). Accordingly, there is a strong presumption that an alleged deficiency "falls within the wide range of reasonable professional assistance." *Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (*quoting Strickland*, 466 U.S. at 689).

To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

## IV. **Analysis**

### 1. **Ineffective Assistance of Counsel**

Petitioner was arrested on December 26, 2011, indicted on February 28, 2012, and tried on February 18, 2014. (DE 23-24, pg. 986). He was represented by five attorneys, four trial attorneys and one appellate attorney, and maintains that he was denied effective assistance of counsel. William A. Brooks was initially appointed to represent Oliver on December 26, 2011; however, on or about October 2, 2012, Brooks filed a motion to withdraw as counsel, stating that the defendant Oliver had "expressed his dissatisfaction with Counsel's representation and in the manner he expects Counsel to conduct his representation." (DE 23-10, pg. 423). On October 4, 2012, the Court appointed Michael Cohen to represent the defendant.[3] (Id., pg. 427). Due

---

[3]Petitioner alleged in his state writ application and his petition for discretionary review that Cohen was ineffective because he prosecuted Oliver as a District Attorney in another case and, therefore, had a conflict of interest. However, petitioner does not raise any complaints against Cohen in his federal writ. Moreover, Cohen withdrew immediately upon learning of the conflict and it is unclear how petitioner was prejudiced by this one month representation.

to a conflict, Cohen was allowed to withdraw and one month later, Tony Jimenez was appointed to represent Oliver. (Id., pg. 428). On or about October 25, 2013, after representing petitioner for almost one year, Mr. Jimenez filed a motion to withdraw as counsel, stating that the defendant had requested that the Court appoint alternate counsel. (Id., pg. 525). Wallace P. Tarver was then appointed on November 28, 2013, and continued to represent Oliver throughout the trial, which was held on February 18, 2014. Vincent Dennis Callahan was appointed as petitioner's counsel on appeal.

### a. Speedy Trial Claim

Petitioner contends that his trial attorneys were deficient in failing to obtain a ruling on his motion for a speedy trial and as a result, he was denied due process.[4] Oliver maintains that the time between his arrest, the charge and indictment was well past the thirty day time limit and that his ability to present a defense was prejudiced by this delay due to the "disappearance of the only eyewitness's in this case."

In determining whether the federal or state right to a speedy trial has been denied, the court employs a balancing test in which the conduct of both the State and the defendant are weighed. *Shaw v. State*, 117 S.W.3d 883, 888 (Tex. Crim. App.

---

[4]To the extent petitioner newly asserts his appellate counsel was deficient in not raising this issue on appeal, petitioner has failed to exhaust his State Court remedies. *Picard*, 404 U.S. at 275.

2003); *see Barker v. Wingo*, 407 U.S. 514, 530 (1972); *accord Kelly v. State*, 163 S.W.3d 724, 726 (Tex. Crim. App. 2005). In determining whether a particular defendant has been deprived of his right to a speedy trial, courts have considered the following factors: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker,* 407 U.S. at 530; *see Shaw,* 117 S.W.3d at 889. In this case, the respondent concedes that the two year delay in this case is sufficient to trigger the *Barker* analysis.

Petitioner's first trial counsel, Mr. Brooks, stated that he did not file and argue a motion for speedy trial because at the time, the Court was following a Felony Case Plan and petitioner's case was labeled "standard." (DE 23-24, pgs. 974-75). Brooks states that from the time that Oliver was arrested until the time he withdrew as counsel, the State did not take any action to delay the case; instead, any delay was caused by the Court's scheduling and the Felony Case Plan. (Id.).

Mr. Jimenez, petitioner's third trial counsel, states that he filed a Speedy Trial Motion and did not obtain a ruling prior to withdrawing as petitioner's counsel. (DE 23, pg. 965). However, Mr. Jimenez points out that, according to both petitioner and Mr. Tarver, the motion was ruled on in mid-February of 2014, after Jimenez withdrew, and was denied. (Id.). Mr. Jimenez opines that in all likelihood, the same

11

result would have occurred had the Court ruled on the motion a year earlier.[5]  (Id.).  Further, Mr. Tarver, petitioner's fourth trial attorney, states that he believes the trial delay had more to do with problems between petitioner and his attorneys than anything the State did.  (DE 23, pg. 969).

Here, trial counsel appear to agree that the State was not at fault in any delay that resulted; instead, the court's busy trial docket appears to have been a large factor.  Another factor contributing to the delay appears to have been petitioner's repeated requests for a change of counsel. Petitioner requested that three of his attorneys withdraw and that he be appointed new counsel.  This required the current attorney to file a motion, and the court to rule on the motion and then appoint a new attorney, who then required additional time to familiarize himself with petitioner's case.  Thus, although the record indicates that petitioner asserted his right to a speedy trial, it also reflects that petitioner repeatedly delayed the proceedings by requesting new counsel on three separate occasions.  Moreover, although petitioner contends that his ability to present a defense was prejudiced by this delay due to the "disappearance of the only eyewitness's in this case," Mr. Tarver stated that he contacted one of the witnesses

_____

[5] Although petitioner argues he was denied effective assistance because the motion for speedy trial was not ruled on, Mr. Tarver states that he requested a ruling and the motion was denied.(DE 23, pg. 969).

who told him that neither she nor her sister were interested in coming to court and that they were tired of Oliver and his mess." (Id., pg. 968). Based on the trial court's denial of the motion, as well as the fact that the record reflects that the witnesses had not disappeared but rather were disinterested in testifying, petitioner has not demonstrated that he was, in fact, prejudiced by counsel's failure to obtain a ruling on a motion for speedy trial. *Strickland*, 466 U.S. at 694.

Additionally, in reviewing petitioner's complaints, the state habeas trial court found that trial counsel sufficiently rebutted all allegations and provided a detailed account of their work on the case. The Court concluded that trial counsel's representation did not fall below an objective standard of reasonableness. (DE 23-24, pg. 991).

In subsequently denying petitioner's claim, the TCCA likewise found trial counsel's performance was not deficient. (DE 23, pg. 2). The TCCA's implicit and explicit factual findings and credibility determinations are entitled to a presumption of correctness, which may be overcome only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Marshall v. Lonberger*, 459 U.S. 422, 433 (1983); *Neal v. Puckett*, 239 F.3d 683, 696 (5th Cir. 2001). Petitioner has not shown that the TCCA's decision was an unreasonable application of either clearly established federal law or the facts in light of the

evidence presented. Accordingly, petitioner's ineffective assistance of counsel claim based on trial counsel's failure to obtain a ruling on his motion for a speedy trial is denied and dismissed with prejudice.

### b. Failure to Subpoena Witnesses

Petitioner next alleges that his trial counsel was deficient in failing to subpoena witnesses petitioner maintains were necessary to his defense.[6] In particular, petitioner maintains that A. Stairs, S. Hargraves and Z. Bernard, the three women who were present when Oliver was arrested, should have been subpoenaed. The record reflects an affidavit by Stairs who states she was not threatened and did not fear Oliver; however, Stairs does not deny that Oliver threatened the officers. (DE 23, pg. 959). Ms. Bernard also submitted an affidavit wherein she states she witnessed a verbal altercation between Oliver, her sister, Anayka Stairs, and S.A.P.D. (Id., pg. 33). In this affidavit, which was taken on March 5, 2012, over two months after the incident in question, Bernard represents that she did not "recall Mr. Oliver threatening any one or [herself]." (Id.). However, this affidavit does not appear to have been submitted in support of petitioner's state writ application or PDR and, therefore, has no bearing on a § 2254(d)(1) review as

---

[6]To the extent petitioner newly asserts his appellate counsel was deficient in not raising this issue on appeal, petitioner has failed to exhaust his State Court remedies. *Picard*, 404 U.S. at 275.

this Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181-82.

Notably, petitioner's first trial counsel, Mr. Brooks, addressed this allegation in responding to petitioner's state writ:

> Oliver alleges key witnesses, whose testimony would have greatly aided the defense disappeared during the two year period between his indictment and trial. In the facts supporting ground one (1) of Oliver's application he claims the loss of witness testimony, 'that I did not commit these retaliation crimes and did not threaten anyone.' I am not able to determine the name of the person or persons that could provide that testimony from the facts supporting ground one (1). However, Oliver does name Zuleyka Bernard, An[a]yka Stairs and Sylvia Hargr[a]ves as the individuals present during his arrest in his application for relief. On March 28, 2011 [sic], I interviewed Oliver's fiancé, An[a]yka Stairs, and her sister Zuleyka Bernard (Bernard). Sylvia Hargr[a]ves was unavailable and unwilling to speak with me. During that interview Stairs and Bernard were unable to say whether Oliver committed the offense of retaliation of whether Oliver threatened anyone. I obtained an affidavit and contact information and I was in contact with both Stairs and Bernard until I withdrew from Oliver's case.

(DE 23, pgs. 986-87).

Petitioner's fourth attorney, Mr. Tarver, also addressed this complaint in his response to petitioner's state writ:

> Regarding subpoenaing of witnesses to court, Mr. Oliver and I addressed this a lot. I got a phone number to call from the Investigator's report as well as from Mr. Oliver. Neither number produced results. I spoke with a lady when I called one of the numbers on my cell phone at court. I identified myself and explained what I wanted. She did not identify herself, but informed me that neither she nor her sister were interested in coming to court. She

indicated to me that they were tired of Mr. Oliver and his mess. I related this to Mr. Oliver who responded cursing, "fuck those bitches." I tried at different times calling back and the phone would either ring, or in one instance, someone picked up, I identified myself and they hung up. I spoke with two of Mr. Oliver's family members who came to court, a cousin and an older daughter, neither was helpful in contact information on the witnesses. The cousin told me that no one was coming to testify for Mr. Oliver because they were all fed up with him. She indicated that they knew what was going on, they just didn't want to get involved. I informed Mr. Oliver of all of this and he told me to leave the ladies to him, that he could get them down to court. He indicated that he still had a close relationship with them (the wife and sister) and he could get them to testify.

I also explained to Mr. Oliver that even if the ladies testified, it was not a done deal that their testimony would be favorable or if favorable not necessarily persuasive with the jury. I advised him that his wife had signed a San Antonio Police Department form 2089 stating that he slammed her finger in the door, and drug her down the hall by her hair. I also told him that she said that he was upset and violent that night. I told him a jury did not have to believe anything the ladies said. I told him the State would paint their testimony if it was supportive as being fearful of challenging him face to face in court.

In my opinion, even if the witnesses had shown up including the Investigator I don't believe the jury would have been persuaded by them due to the over whelming bad facts on the States' side of the case. I just don't see that a jury would find them credible if they testified that Mr. Oliver was neither threatening nor violent towards anyone that night. Any witness would have been hard pressed to explain what happened when he came home and how they ended up being locked out the house at 3 o'clock in the morning with the baby still inside. I explained that their testimony at the very least would be problematic. I explained that the wife would be forced to describe the 'fight' they had that led to her finger getting slammed in the door; and to explain how she lost tufts of her hair in the hallway; and relate how she got locked out of a room away from her three week old baby. I explained to Mr. Oliver that I saw nothing positive in going to trial, there were too many negative facts to overcome.

The Investigator was never discussed as far as him coming to court. The witness count was always two, the wife and her sister. Finally, regarding the lady witnesses, neither of them have called me in the year and a half since trial requesting information or asking how they can help. I find that extremely telling, nor have they provided affidavits for Mr. Oliver in his application to this court seeking post-conviction relief.

(DE 23, pgs. 987-88).

Here, trial counsel's decision not to subpoena three witnesses who gave statements to the officers at the time of the incident that they had been threatened by the petitioner only to later recant their statements does not appear to be unreasonable. *Cotton*, 343 F.3d at 752-53 (trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel "unless [they are] so ill chosen that [they] permeate the entire trial with obvious unfairness"). As Mr. Tarver stated in his response, it is doubtful the jury would have believed the testimony of family members who subsequently recanted their statements, particularly in view of evidence depicting injuries that were sustained and were consistent with the original version of events reported to the officers. Accordingly, Oliver has not overcome the strong presumption that counsel's failure to subpoena the three witnesses "falls within the wide range of reasonable professional assistance." *Feldman*, 695 F.3d at 378 (*quoting Strickland*, 466 U.S. at 689).

Additionally, the state habeas trial court also found that trial counsel sufficiently rebutted all allegations and provided a detailed account of their work on the case. The Court concluded that trial counsel's representation did not fall below an objective standard of reasonableness. (DE 23-24, pg. 991). Moreover, in subsequently denying petitioner's claim, the TCCA likewise found trial counsel's performance was not deficient. (DE 23, pg. 2). The TCCA's implicit and explicit factual findings and credibility determinations are entitled to a presumption of correctness, which may be overcome only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Marshall*, 459 U.S. at 433; *Neal*, 239 F.3d at 696. Petitioner has not shown that the TCCA's decision was an unreasonable application of either clearly established federal law or the facts in light of the evidence presented. Consequently, Oliver's claim of ineffective assistance of counsel based on trial counsel's failure to subpoena witnesses is denied and dismissed with prejudice.

### c. Right to Confront Witnesses

Petitioner next asserts that trial counsel was ineffective in allowing officers to testify regarding statements made to them by the three complainants in violation of petitioner's right to confront witnesses. (DE 16, pg. 7). However, in his state writ application and his petition for discretionary

review, petitioner asserted that his Sixth Amendment right to confront witnesses was violated when the judge allowed the officers to introduce statements of nontestifying witnesses and further, permitted the State to make prejudicial statements regarding petitioner assaulting family members despite the fact that petitioner was neither charged with nor convicted of assault. (DE 23, pg. 859). The state court was never presented with petitioner's current complaint that he was denied effective assistance of counsel when this evidence and statements were admitted.[7] *Picard*, 404 U.S. at 275. Although petitioner's federal claim is somewhat similar, it is well settled that "it is not enough . . . that a somewhat similar state-law claim was made." *Wilder*, 274 F.3d at 260 (*citing Anderson*, 459 U.S. at 6). Because petitioner has raised an argument based on a legal theory distinct from that relied upon in the state court, he has failed to satisfy the exhaustion requirement and his claim is denied. *Id.* at 259.

---

[7] In his supplement, petitioner complains that although he asked appellate counsel to assert ineffective assistance by his trial counsel (with respect to illegal search and seizure, compulsory process, confrontation clause, *Batson* Challenge, etc.), his appellate counsel refused. (DE 36, pg. 2). However, in his state court writ, filed on December 17, 2015, petitioner alleged that Tarver and Brooks failed to pursue his "speedy trial interest"; Cohen had a "conflict of interest"; Jimenez failed to obtain a ruling on the speedy trial motion; and Tarver also failed to investigate and prepare the case for trial, as well as subpoena witnesses. (DE 23-24, pgs. 16-7). Petitioner raised ineffective assistance only with respect to one of his four grounds while his remaining grounds were not raised in terms of ineffective assistance of counsel.

### d.   Failure to Object to Hearsay

Petitioner next alleges that trial counsel was deficient in failing to object to hearsay testimony. Petitioner maintains that the officers' testimony regarding statements made by the three women witnesses should have been objected to and precluded as hearsay. The record reflects that during a hearing held outside the presence of the jury, trial counsel objected to this testimony; however, the Court ruled that the statements would be admissible as exceptions to the hearsay rule. (DE 23, pgs. 217-240). In any event, petitioner did not raise this issue in his petition for discretionary review or his state writ application; consequently, petitioner has failed to exhaust his state court remedies as to this claim and it is denied. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Anderson*, 459 U.S. at 6.

### e.   Failure to File Motion to Suppress

Petitioner next asserts that trial counsel was ineffective in failing to file a motion and argue that the officers illegally entered his backyard and house. (DE 16, pg. 11). However, in his state writ, petitioner alleged he had been subjected to an illegal search and seizure but did not present these claims as a denial of his right to effective assistance of counsel as he now does in his federal writ. (DE 23, pg. 857). As a result, the state court was never presented with petitioner's current complaint that he was denied effective

20

assistance of counsel when trial counsel failed to argue petitioner was subjected to an illegal search and seizure. *Picard*, 404 U.S. at 275. Although petitioner's federal claim is similar to his state law claim, petitioner has failed to satisfy the exhaustion requirement by raising an argument based on a legal theory distinct from that relied upon in the state court. *Wilder*, 274 F.3d at 259-60. Petitioner's claim is, therefore, denied.

### f. Failure to Provide Copy of Trial Transcripts

Petitioner states that although he asked his trial counsel numerous times for copies of court record reports and trial transcripts, his trial counsel refused "due to an agreement between [counsel] and the District Attorney's Office." This complaint was not previously raised in Oliver's petition for discretionary review or his state writ application. Consequently, petitioner has failed to exhaust his state court remedies and his claim is denied. *Castille*, 489 U.S. at 349 (1989); *Anderson*, 459 U.S. at 6.

## 2. Ineffective Assistance on Appeal

Petitioner also maintains that he received ineffective assistance when his appellate counsel failed to raise grounds that the state habeas court found could have been raised on appeal. (DE 16, pg. 7). In his supplement to his response, petitioner contends that his appellate counsel was ineffective

21

in failing to allege on appeal that trial counsel was ineffective in failing to subpoena witnesses at trial and failing to request rulings on the motion to suppress and motion for speedy trial.

However, in his state habeas application, petitioner argued that 1) his right to a speedy trial and due process were violated; 2) he was subjected to an illegal search and seizure; and 3) he was denied his Sixth Amendment right to confrontation. In its Order dismissing petitioner's claims, the court stated that "[t]he three claims presented in this habeas petition have already been raised by Applicant on appeal or were available to him at the time of appeal. Accordingly, this court finds that Applicant is not entitled to raise these claims on habeas." (DE 23, pg. 991). At no time did petitioner raise the claim that he received ineffective assistance when his appellate counsel failed to raise grounds that the state habeas court found could have been raised on appeal in a petition for discretionary review or a state writ application. Consequently, petitioner has failed to exhaust his state court remedies and his claim is denied. *Castille*, 489 U.S. at 349 (1989); *Anderson*, 459 U.S. at 6.

## 3. *Batson* Challenge

Lastly, petitioner contends that African-Americans were excluded from the jury "for no other reason than being African-

American" in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). Petitioner alleges that six venire members who were African-American were excluded from the jury but fails to state who they were challenged by or why they were challenged and further, fails to state their juror numbers or otherwise identify them. Moreover, this issue was not previously presented to the state court or to the Court of Criminal Appeals; therefore, petitioner has failed to exhaust his State Court remedies and his claim is denied. *Castille*, 489 U.S. at 349 (1989); *Anderson*, 459 U.S. at 6.

## 4. Requests for a Hearing and for "Time Limitations"

Petitioner has also filed a Motion for An Evidentiary Hearing (DE 32) and a Motion for Time Limitation (DE 34). Section 2254(e)(2) authorizes evidentiary hearings under narrow conditions. Because an evidentiary hearing unnecessary to adjudicate Oliver's petition, his motion is **DENIED.** (DE 32). Petitioner's Motion for Time Limitation, which essentially reurges his Speedy Trial Motion and seeks that his indictment be dismissed, is also **DENIED.** (DE 34).

## V. Certificate of Appealability

The Court next determines whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (*citing* 28 U.S.C. § 2253(c)(1)). A COA may issue only if

a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  For the reasons set forth above, the Court concludes that reasonable jurists would not debate the conclusion that Oliver was not entitled to federal habeas relief.  As such, a COA will not issue.

## VI. Conclusion and Order

Petitioner has failed to establish that the state court's rejection of the aforementioned claims on the merits during his state habeas corpus proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the

facts in light of the evidence presented in the petitioner's state trial and habeas corpus proceedings. As a result, Darrick Davon Oliver's federal habeas corpus petition does not warrant federal habeas corpus relief.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Federal habeas corpus relief is **DENIED** and petitioner Darrick Davon Oliver's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 petition (DE 16) is **DISMISSED WITH PREJUDICE**;

2. No Certificate of Appealability shall issue in this case; and

3. All other remaining motions, including petitioner's Motion for an Evidentiary Hearing (DE 32) and "Motion for Time Limitation" (DE 34), are **DENIED,** and this case is now **CLOSED**.

**It is so ORDERED.**

**SIGNED** this _____ day of November, 2017.

_____
**ORLANDO L. GARCIA**
**Chief United States District Judge**